UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

Richard Arjun Kaul, M.D.,

       *Plaintiff*,

    v.

Robert A. Marino, et al.,

       *Defendants*.

Civil Action No. 23-518
(MEF)(AME)


**OPINION and ORDER**

## Table of Contents

I.  Procedural History

II. The Motion

III. Limitations Periods: In General

IV. RICO — Count One

    A. Length

    B. Starting Point

        i.  Injury: Non-Reimbursement

        ii.  Injury: License Revocation

       iii.  Conclusion

V. Due Process — Count Eight

    A. Length

    B. Starting Point

        i.  Injury: License Revocation

        ii.  Injury: Unconstitutional Proceeding

VI. Section 1981 — Count Eight

    A. Length

    B. Starting Point

VII. Due Process and Excessive Fines — Count Eleven
    A. Length
    B. Starting Point
        i. Injury: $475,422 Fee
        ii. Injury: $325 Fee
VIII. Potentially Relevant Doctrines
IX. Conclusion

A doctor's medical license was revoked by state regulators.

The doctor then sued an insurance company and one of its former executives, for their role in a "massive" conspiracy to prevent him from practicing medicine.

The insurance company and the former executive have now moved to dismiss the complaint.

The motion is granted as to the claims discussed here.[1]

## I.    **Procedural History**

The doctor's medical license was revoked in March of 2014 by the New Jersey Board of Medical Examiners.[2]  See Complaint at ¶ 13.

The doctor initiated this lawsuit on January 27, 2023,[3] alleging a very broad national conspiracy to "target principally ethnic

---

[1]  The rest of the claims are addressed in a separate order, issued today.

[2]  "New Jersey's Board of Medical Examiners is responsible for protecting the public's health and safety by determining qualifications of applicants for licensure, establishing standards for practice, and disciplining licensees who do not adhere to those requirement."  State Board of Medical Examiners, N.J. Division of Consumer Affairs, www.njconsumeraffairs.gov/bme (last visited Oct. 12, 2023).

[3]  The case was reassigned to the undersigned on May 31, 2023.

minority physicians," including the doctor, and to "cause the illegal revocation of their medical licenses." <u>Id</u>. at ¶¶ 1, 12.[4]

An insurance company and its former chief executive officer (collectively, "the Defendants")[5] are alleged to have joined the conspiracy.

## II.   **The Motion**

The Defendants have now moved to dismiss. <u>See</u> Brief Memorandum of Law in Support of Motion to Dismiss at 6 ("Defendants' Memorandum"). Among other things, they argue the Plaintiff's[6] complaint comes too late, and is therefore time-barred.

To evaluate this argument, the Court briefly lays out relevant general principles (Part III); considers certain claims said to be time-barred (Part IV, Part V, Part VI and Part VII); and assesses two arguments that might sometimes (but not here) save otherwise time-barred claims (Part VIII).[7]

---

[4] Some other cases filed by the doctor are referenced in the appendix. One of these is of particular relevance: a 2016 lawsuit brought by the doctor against approximately 40 defendants, including the New Jersey Board of Medical Examiners and various New Jersey officials. <u>See</u> <u>Kaul</u> v. <u>Christie</u>, 372 F. Supp. 3d. 206 (D.N.J. 2019). That suit, which is discussed below, ended with all of the doctor's claims being dismissed by this Court. <u>See</u> <u>id</u>. at 255.

[5] The Defendants are Robert A. Marino and Horizon Blue Cross Blue Shield.

[6] The Plaintiff is the doctor, Richard Arjun Kaul.

[7] The Plaintiff is <u>pro</u> <u>se</u>, and the Court hews to its "well-established" obligation to "construe a <u>pro</u> <u>se</u> litigant's pleading[]" liberally. <u>Higgs</u> v. <u>Atty. Gen. of the U.S.</u>, 655 F.3d 333, 339 (3d Cir. 2011) (cleaned up). This requires the Court to "make reasonable allowances to protect <u>pro</u> <u>se</u> litigants from inadvertent forfeiture of important rights because of their lack of legal training." <u>Id</u>. (cleaned up). However, "<u>pro</u> <u>se</u> litigants still must allege sufficient facts in their complaints to support a claim." <u>Mala</u> v. <u>Crown Bay Marina, Inc.</u>, 704 F.3d 239, 245 (3d Cir. 2013); <u>accord</u> <u>Rivero</u> v. <u>Monko</u>, 37 F.4th 909, 914 (3d Cir. 2022). The Court should not "draft a second amended complaint" for a <u>pro</u> <u>se</u> plaintiff. <u>Andela</u> v. <u>American</u>

### III. Limitations Periods: In General

Civil claims must generally be filed within a certain amount of time.[8]  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).
If they are not, they must ordinarily be dismissed.  See id.

An argument that a claim was filed too late, and is therefore time-barred, may be pressed in a motion to dismiss, if the "time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."
Id. (cleaned up).

Here, that is the Defendants' approach.  They have moved to dismiss because, they argue, the complaint itself establishes that various limitations periods have expired.  See Defendants' Memorandum at 21.

### IV. RICO — Count One

Start the analysis with Count One of the complaint, which presses a federal RICO[9] claim.  As set out below, the claim is time-barred.

#### A. Length

The limitations period for a federal RICO claim is four years.
See Mathews v. Kidder, Peabody & Co., Inc., 260 F.3d 239, 245 (3d Cir. 2001).  A plaintiff therefore has four years to file their RICO claim, from the point when the limitations period started running.

#### B. Starting Point

---

Ass'n for Cancer Research, 389 F. App'x 137, 142 (3d Cir. 2010);
see also Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (noting that pro se plaintiffs "must abide by the same rules that apply to other litigants").

[8]  The amount of time --- a "limitations period" --- is sometimes called a statute of limitations.  This is because even during a more common law-focused era, limitations periods were often set out in statutes.  See Wm. Grayson Lambert, Focusing on Fulfilling Goals: Rethinking How Choice-of-Law Regimes Approach Statutes of Limitations, 65 Syracuse L. Rev. 491, 495-96 (2015).

[9]  "RICO" is the Racketeer Influenced and Corrupt Organizations Act.  See 18 U.S.C. §§ 1961-1968.

As to a RICO claim, the limitations period begins to run when a plaintiff "knew or should have known of . . . [his] injury and its source." Prudential Ins. Co. of Am. v. U.S. Gypsum Co., 359 F.3d 226, 233 (3d Cir. 2004).[10]

Because the limitations period is keyed to a plaintiff's injury, the injury must first be identified. See LabMD Inc. v. Boback, 47 F.4th 164, 179 (3d Cir. 2022).

Here, the Plaintiff's complaint seems to allege two distinct RICO injuries.

### i. Injury: Non-Reimbursement

The first: the Defendants did not reimburse the Plaintiff for care he provided to patients who the Defendants insured. See Complaint at ¶ 29.

But the Plaintiff was aware by 2012 that the Defendants did not do this. See id. How do we know? Because, per the complaint, the Plaintiff sued the Defendants for non-reimbursement in 2012. See id.

And in any event, the Plaintiff's medical license was suspended as of 2012. See id. at ¶ 61. There is no plausible likelihood he was seeing patients after that, and seeking reimbursement for doing so.[11]

Adding it up: 2012, plus four years (the length of the RICO limitations period), means 2016 was the year by which a federal RICO claim against the Defendants based on a non-reimbursement injury needed to be filed. The Plaintiff, though, filed his claim in 2023.

---

[10]  The "components are disjunctive." Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 507 (3d Cir. 2006). They are "or," not "and." This means the limitations period begins to run when a plaintiff knew of his injuries, or should have know of his injuries --- whichever came first. See id.

[11]  When did the Plaintiff know of the alleged "source" of his injury? See generally Prudential Ins. Co. of Am., 359 F.3d at 233. At the latest by 2012, when he sued the Defendants for not making reimbursement payments. See Complaint at ¶ 29. The source of a non-payment injury is the entity that fails to pay.

### ii. Injury: License Revocation

The second alleged injury: the Plaintiff's medical license was revoked.  See Complaint at ¶ 29.  But this happened in 2014. When did the Plaintiff learn of his license revocation?  At the latest in 2016 --- when he sued in this Court to contest the revocation.[12]  See Kaul, 372 F. Supp. 3d. at 206.[13]

---

[12]  When did the Plaintiff know of the alleged "source" of this injury?  Again, by 2016.  The alleged source of his injury was a large-scale conspiracy between the New Jersey Board of Medical Examiners, Chris Christie, and around 40 other defendants.  See Complaint at ¶¶ 12, 13 (describing this same conspiracy).  The Plaintiff sued in 2016 in this Court alleging precisely that conspiracy.  See Kaul, 372 F. Supp. at 215.  And the Plaintiff's basic claim here is that the Defendants in the current case closely conspired with the parties he sued in 2016.  See Complaint at ¶¶ 12, 13, 16, 27, 29, 38, 49, 50, 106, 107, 110, 111, 114, 120, 122, 126, 127, 149, 152, 154, 155, 163, 164, 165, 167, 168, 178, 179, 192, 195.

[13]  As noted in the text, the Plaintiff filed a lawsuit in this Court in 2016.  The current complaint makes repeated references to the 2016 case.  See Complaint at ¶¶ 12, 13, 16, 27, 29, 38, 49, 50, 106, 107, 110, 111, 114, 120, 122, 126, 127, 149, 152, 154, 155, 163, 164, 165, 167, 168, 178, 179, 192, 195. Therefore, the publicly-available docket sheet and opinion for the 2016 case, which show the progress of that litigation, are "integral to or explicitly relied upon in the [current] complaint" and can be referred to here by the Court in deciding the Defendants' motion to dismiss.  See Schmidt, 770 F.3d at 249; see also Wells v. United States, 318 U.S. 257, 260 (1943); S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd., 181 F.3d 410, 413, 426-27 (3d Cir. 1999); Mar. Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991), reh'g granted and opinion vacated (Jan. 10, 1992), opinion reinstated on reh'g (Mar. 24, 1992); United States ex rel Geisler v. Walters, 510 F.2d 887, 890 n.4 (3d Cir. 1975); In Re Plum Baby Food Litig., 637 F. Supp. 3d 210, 220 n. 4 (D.N.J. 2022); Ryanair DAC v. Booking Holdings Inc., 636 F. Supp. 3d 490, 498 (D.N.J. 2022); FCS Capital LLC v. Thomas, 579 F. Supp. 3d 635, 647 (E.D. Pa. 2022);  Medley v. Atl. Exposition Serv., Inc., 550 F. Supp. 3d 170, 184 (D.N.J. 2021); 1 Jack B.

### iii. **Conclusion**

The Plaintiff's federal RICO claim is based on one of two alleged injuries ——— non-reimbursement for medical services provided, and the revocation of his medical license.  But the Plaintiff knew of those injuries by 2012 (as to non-reimbursement) and 2016 (as to revocation).

This means the federal RICO claim is time-barred.  It was first filed in 2023.  But on the reimbursement theory, the RICO claim needed to be filed by 2016, four years after 2012.  And on the license theory, the RICO claim needed to be filed by 2020, four years after 2016.

## V.   **Due Process — Count Eight**

The Plaintiff's next claim: that his Due Process rights were violated by the Defendants. This claim, as described below, is also time-barred.

### A. **Length**

The cause of action for the Due Process claim is 42 U.S.C. § 1983, see Complaint at ¶ 152, and the limitations period for such a claim in New Jersey is two years.  See Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010).  The Plaintiff therefore had two years to file his Due Process claim from when the limitations period started running.

### B. **Starting Point**

The limitations period starts to run when a plaintiff "knew or should have known of the injury upon which the action is based." Sameric Corp. of Del. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998).

Here, there seem to be two Due Process injuries alleged in Count Eight.

#### i. **Injury: License Revocation**

The first: revocation of the Plaintiff's medical license.  The Plaintiff was aware of the license revocation by 2016.  See Part IV.B.ii above.

---

Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 201.12[3] (2d ed. 2008).

Start in 2016, add two years (for the limitations period), and the Plaintiff should have filed his claim by 2018.   Instead, it was filed in 2023, as part of Count Eight of the complaint.

### ii.  Injury: Unconstitutional Proceeding

The second alleged injury: the Plaintiff was subjected to allegedly unconstitutional administrative proceedings that led to the revocation of his medical license.   See Complaint at ¶ 152.   The Plaintiff was aware of these proceedings by 2016, when he sued to challenge them.   See Kaul, 372 F. Supp. at 215.

Same as above: the limitations period started running in 2016, and expired two years later.   But the Due Process claim was first pressed in 2023.   It is therefore time-barred.

## VI.   Section 1981- Count Eight

Count Eight alleges the Defendants violated Section 1981.   This is also time-barred.

### A. Length

It is not clear which portion of Section 1981 the Plaintiff is invoking.   See Complaint at ¶¶ 151-168.

And different parts of Section 1981 are controlled by different limitations periods --- one part has a two year period, and one part has a four year period.   See McCreary v. Redevelopment Auth. of Erie, 427 F. App'x 211, 214 (3d Cir. 2011).

Here, the Court will assume the longer four-year limitations period applies.   See generally Jones v. R.R. Donnelly & Sons Co., 541 U.S. 369, 381 (2004).

### B. Starting Point

The limitations period on a Section 1981 action begins to run when a plaintiff "knew or should have known of the injury upon which [his] action is based."   Webb v. Susquehanna Twp. Sch. Dist., 93 F. Supp. 3d 343, 350 (M.D. Pa. 2015) (alteration in original) (quoting Sameric Corp. of Del., Inc., 142 F.3d at 599).

This requires identifying the injury.   What is it here?

Central to any Section 1981 claim are allegations related to a contract.[14]  See generally Dominos Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006).  But Count Eight does not refer to a contract.  See Complaint at ¶¶ 151-168.  That said, because the Plaintiff is pro se the Court assumes he means to invoke an alleged agreement between himself and the Defendants, for the Plaintiff to care for patients insured by the Defendants, in exchange for payment.  See id. at ¶ 37.  The Court will use that alleged agreement for the limitations period analysis.

If that is the agreement, what is the injury?  That the Defendants did not make required payments to the Plaintiff for care he provided.  See Complaint at ¶¶ 8-11.

The Plaintiff was aware of this by 2012.  How do we know?  Because he filed suit against the Defendants in 2012, to recover the money they allegedly owed him.  See id. at ¶ 11; Part IV.B.i.

Take 2012; add four years (the limitations period); and the Plaintiff should have brought this claim by 2016.  Instead, he first raised it in 2023, when he brought this case.  The claim is time-barred.

## VII.  Due Process and Excessive Fines – Count Eleven

In Count Eleven, the Plaintiff alleges the Defendants violated his rights under the Due Process and Excessive Fines clauses of the United States Constitution, based on their alleged role in fining the Plaintiff in connection with the revocation of his medical license.  See Complaint at ¶ 192.[15]

### A.  Length

The limitations period here is two years.  See Dique, 603 F.3d at 185; see also Part V.A. above.

### B.  Starting Point

---

[14]  Section 1981: "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981.

[15]  The Plaintiff does not, as he must, specify the cause of action.  Because the Plaintiff is pro se, the Court proceeds as if Section 1983 was invoked.

The limitations period begins running from when a plaintiff "knew or should have known of the injury upon which the action is based." Sameric Corp. of Del., 142 F.3d at 599; see also Part V.B. above.

Here, there seem to be two alleged Count Eleven injuries.

### i.   Injury: $475,422 Fee

The first: a $475,422 fee imposed on the Plaintiff when his medical license was revoked in 2014. See Complaint at ¶ 192. The Plaintiff knew of this fee in 2014, because that was when he says he was required to pay it. Id.[16]

Start in 2014; add two years for the limitations period; and the Plaintiff should have filed this claim by 2016 --- not in 2023, when he filed it as part of this lawsuit.

### ii.   Injury: $325 Fee

The second alleged injury: in 2019, the Plaintiff paid a $325 application fee to try and have his medical license reinstated. See Complaint at ¶¶ 192, 196.[17]

---

[16]  To the extent the Plaintiff's claim is that the $475,422 fee was imposed in violation of Due Process because it was based on an unconstitutional 2014 administrative proceeding, that, too, would be time-barred. See Part V.B.ii above.

[17]  The Plaintiff alleges that until late 2021 he continued to try and have his license reinstated. Id. at 198. However, the $325 fee is the "injury upon which [the] action is based." Sameric Corp. of Del., 142 F.3d at 599. The Plaintiff knew during 2019 both that he had paid the $325 fee, and that his payment would not trigger a process that would lead to him receiving a new medical license. See Complaint at ¶¶ 192, 196. Therefore, he knew he had a "complete and present cause of action" in 2019. Dique, 603 F.3d at 185-86. That is the date that matters here, not what the Plaintiff may have done afterward to address his alleged injury. Cf. Prudential Ins. Co. of Am., 359 F.3d at 236; New Skies Satellites, B.V. v. Homes2US Comm's, Inc., 9 F. Supp. 3d 459, 467 (D.N.J. 2014); Weyerhauser Co. v. Domtar Co., 61 F. Supp. 3d 445, 452 (D. Del. 2014); Wright v. ICI Americas Inc., 813 F. Supp. 1083, 1094 (D. Del. 1993).

Start in 2019; add two years for the limitations period; and the
Plaintiff should have filed his claim by 2021 --- not in 2023,
when he filed it as part of this suit.

## VIII.        Potentially Relevant Doctrines

As noted, the claims set out above are time-barred.

Certain legal doctrines can sometimes allow a plaintiff to
proceed with a lawsuit that would otherwise be time-barred.  But
the Plaintiff here does not raise these.  They are not discussed
in the Plaintiff's brief, or suggested by his complaint.
Accordingly, even reading the pro se complaint liberally, see
Higgs, 655 F.3d at 339, none of these doctrines are in play.

For the sake of completeness, though, the Court assumes arguendo
that two of these doctrines have indeed been raised --- and
explains why that would not make a difference.

First, the complaint at points alleges an "ongoing pattern of
racketeering," "ongoing misconduct," "a criminal scheme that is
ongoing," "schemes . . . [that] are currently ongoing," and
alleges that the Plaintiff "continues to suffer," and "continues
to be injured."  Complaint at ¶¶ 5, 6, 39, 40, 41, 77, 96.  But
these are entirely conclusory allegations.  See Knight v.
Spyker, 2023 WL 149062, at *3 (M.D. Pa. Jan. 10, 2023) (holding
allegations of an "ongoing covert conspiracy" were "vague and
conclusory"); Washington v. Folino, 2013 WL 998013, at *2 (W.D.
Pa. Feb. 28, 2013) (noting that the plaintiff's allegations of
an "ongoing retaliatory conspiracy" were conclusory); Bracey v.
Rendell, 2012 WL 226871, at *2 (W.D. Pa. Jan. 25, 2012)
("[p]laintiff's conclusory and sporadic allegations of an
ongoing retaliatory conspiracy against him" were not
sufficient).  And such conclusory allegations, without any
meaningful information regarding actions within the limitations
period, do not preserve claims that are otherwise time-barred.
See Boeski v. North Arlington Municipality, 621 F. App'x 131,
134 (3d Cir. 2015) (holding that conclusory allegations of a
"continuous tort and conspiracy are insufficient to justify
additional tolling" of the limitations period); Wells v.
Rockefeller, 728 F.2d 209, 217 (3d Cir. 1984); Graff v. Kohlman,
28 F. App'x 151, 154 (3rd Cir. 2002)); Sandutch v. Muroski, 684
F.2d 252, 254 (3d Cir. 1982) abrogated on other grounds.[18]

---

[18]  In a related vein, a limitations period is not generally
extended solely because an injury continues to cause harm.  See
Fiswick v. United States, 329 U.S. 211, 216 (1946) ("Though the

Second, the complaint alleges that "new evidence did not come into [the Plaintiff's] possession until recently, and was not [previously] available to [him]." Complaint at ¶ 2. This reference, and a few others like it, are not enough to raise the argument that newly-discovered evidence saves the Plaintiff's time-barred claims.

And in any event, new evidence can potentially matter only if it is relevant.[19] But here, the assertedly new evidence is not relevant.

What is the "new evidence"? Two court cases cited by the Plaintiff as sources of information that allegedly led him to discover the Defendants' role in the conspiracy. See Complaint at ¶ 2.

The first case is United States v. Pompey, Indictment, 2:18-cr-20454 (E.D. Mich.) Complaint, Exhibit 1. That was a federal prosecution of a doctor for illegally distributing pain medication. See Complaint, Exhibit 1 at 3.

But that case simply has nothing to do with this one. There is no suggestion that it had something to do with the Plaintiff; the Defendants; or the New Jersey Board of Medical Examiners, New Jersey state officials, New Jersey insurance companies, or any of the scores of people the Plaintiff alleges have conspired against him. See Complaint at ¶¶ 12, 13, 16, 27, 29, 38, 49, 50, 106, 107, 110, 111, 114, 120, 122, 126, 127, 149, 152, 154, 155, 163, 164, 165, 167, 168, 178, 179, 192, 195. Pompey may in

---

result of a conspiracy may be continuing, the conspiracy does not thereby become a continuing one. Continuity of action . . . is necessary."); Randall v. City of Phila. Law Dep't, 919 F.3d 196, 199 (3d Cir. 2019); Bennett v. Susquehanna Cnty Child. & Youth Servs., 592 F. App'x 81, 85 (3d Cir. 2014). What matters are actions within the limitations period, not the felt effects of prior actions.

[19] In a range of contexts, courts have applied the principle that newly discovered evidence, like any evidence, must be relevant. See, e.g., McQuiggin v. Perkins, 569 U.S. 383, 395 (2013); Battle v. Sec'y U.S. Dep't of Navy, 757 F. App'x 172, 176 (3d Cir. 2018); Knecht v. Shannon, 132 F. App'x 407, 409 (3d Cir. 2005).

some sense be new.  But it is not evidence of anything that is relevant here.

So, too, with the other case referenced by the Plaintiff, Anand v. Ind. Blue Cross, 2022 WL 2339476 (3d Cir. 2022) ("Anand II"). See Complaint, Exhibit 5.  Anand II was a civil lawsuit filed by a Pennsylvania physician, against the Pennsylvania Blue Cross Blue Shield corporation.  See Complaint, Exhibit 5.

But again, there is no suggestion that the Plaintiff, the Defendants, New Jersey state officials, or the New Jersey Board of Medical Examiners had anything to do with Anand II.[20]

Bottom line: the Plaintiff did not raise the argument that "new evidence" extended any limitations periods.  And even if he had done so, the evidence he gestures to has no meaningful connection to this case.[21]

---

[20]  The Plaintiff has submitted with his complaint 38 pages of information as to Anand II.  One of the Defendants in this case is mentioned once in one of those pages, as a co-owner of a website.  This is not remotely relevant here, and it does not constitute "new evidence."

[21]  A final point.  Recall that the Plaintiff's core allegation is of a sprawling 40-or-so person conspiracy.  See Complaint at ¶¶ 12, 13, 16, 27, 29, 38, 49, 50, 106, 107, 110, 111, 114, 120, 122, 126, 127, 149, 152, 154, 155, 163, 164, 165, 167, 168, 178, 179, 192, 195.  Even if "new evidence" had now alerted him to the participation of two new co-conspirators (the Defendants) in the conspiracy --- that would likely not matter.  This is because the relevant focus is when the Plaintiff became aware of his injuries, not when he discovered each and every member of an allegedly "massive" conspiracy.  See Graff, 28 F. App'x at 154) ("The rule that a cause of action accrues upon discovery of the injury does not require that a plaintiff have identified every party who may be liable on its claim"); New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1125 (3d Cir. 1997) (holding that accrual is not delayed "until the plaintiff has identified every party who may be liable on its claim. . . . it is sufficient that the [the plaintiff] was aware that its injury was caused in part by another person's conduct"); Byrd v. Finley, 2023 WL 1420445, at * 7 (D.N.J. Jan. 31, 2023) (holding that the Defendant was not required to be aware of every possible defendant or theory of liability for his claims to accrue); Brooks v. Gillen, 2018 WL 1981480, at *6 (D.N.J. Apr. 26, 2018) (holding that the plaintiff's 1983 claim was time-

## IX.    Conclusion

The Plaintiff's RICO (Count One), Due Process (Count Eight), Section 1981 (Count Eight), and Excessive Fines and Due Process (Count Eleven) claims are dismissed. They are time-barred.


IT IS on this 27th day of October, 2023, so **ORDERED**.

Michael E. Farbiarz, U.S.D.J.

---

barred because he knew of his injury before the limitations period expired --- evidenced by his previous suit against different defendants for the same injury); Sandvik, Inc. v. Hampshire Partners Fund IV, L.P., 2014 WL 1343081, at *7, (D.N.J. Apr. 4, 2014) ("[t]he discovery rule does not delay accrual of a cause of action until the plaintiff has identified every party who may be liable on its claim") (cleaned up).

## APPENDIX

Listed below are some of the cases filed by the Plaintiff.

First, in state family court proceedings, the Plaintiff sought to have his medical license reinstated, and argued the revocation of his license was caused by "professional jealousy" against him that led other doctors to bribe Governor Chris Christie to revoke his license. See Kaul v. Kaul, 2018 WL 2949352, at *1-3 (N.J. App. Div. June 13, 2018). The court declined to reinstate his medical license.

Second, the Plaintiff sued Daniel Stolz in the U.S. Bankruptcy Court for the District of New Jersey. See Stolz v. Kaul, No. 2:20-ap-1011-JKS (Bankr. D.N.J. Feb. 9, 2020). The Plaintiff alleged Stolz was part of a large conspiracy against him. The Plaintiff has been permanently enjoined from suing Soltz without permission from the court. See id.

Third, in 2013 the Plaintiff sued five doctors who were members of the Congress of Neurological Surgeons in state court. See Kaul v. Christie, 372 F. Supp. 3d. 206, 225 (D.N.J. 2019). The complaint was dismissed with prejudice as to three of the four doctors in 2014. Id. at 255.

Fourth, in 2016 the Plaintiff filed counterclaims and third-party claims against five defendants in a malpractice suit initiated against him. A default judgement was entered against the Plaintiff on October 29, 2018. See Santos v. Kaul, No. UNN L 003322-15 (N.J. Super. Ct. 2016)

Fifth and sixth, in 2019 the Plaintiff filed two suits in the Northern District of Georgia. The first suit, against seven defendants, alleged a conspiracy and sought to have the New Jersey Fraud Prevention Act held unconstitutional. See Patel v. Crist, No. 1:19-cv-0612 (N.D. Ga. 2019) (Patel I). The second suit alleged a broad conspiracy to discriminate against doctors of Indian descent, and named five defendants. See Patel v. Crist, No. 1:19-cv-0739 (N.D. Ga. Apr. 2, 2019) (Patel II).

Both cases were transferred to the District of New Jersey, and dismissed for lack of standing (Patel I) and failure to state a claim (Patel II). See Patel v. Crist, 2:19-cv-08946 (D.N.J. Oct. 20, 2020); Patel v. Crist, 2:19-cv-09232 (D.N.J. Oct. 20, 2020).

Seventh, in 2019 the Plaintiff sued approximately 36 defendants, including a federal judge.  See Kaul v. Federation of State Medical Boards, 1:19-cv-03050 (D.D.C. Oct. 1, 2019).  The case alleged a conspiracy to revoke the Plaintiff's medical license. See id.  Some of the Plaintiff's claims were transferred to the District of New Jersey, while the remaining claims were dismissed.  See Fed. of State Med. Bds., 2020 WL 7042821, at *17.

Eighth, the Plaintiff filed a lawsuit in state court against various defendants, alleging they participated in a scheme to keep him from obtaining a new medical license in Pennsylvania. See Kaul v. U.C. San Diego Pace Program, MRS-L-000938-23 (N.J. Super. May 25, 2023).

Ninth, the Plaintiff sued Allstate, the State of New Jersey, Chris Christie, and the National Medical Commission of India in Bengaluru, India.  See Complaint, Exhibit 11.  The suit alleges the defendants conspired against Indian healthcare workers.  See id.

Tenth, the Plaintiff sued the United States District Court for the District of New Jersey.  See Complaint., Kaul v. Fed'n of State Med. Bds., No. 21-cv-00057 (N.D. Tex. Jan. 11, 2021)..